UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Kathy St. John Haney and James P. Byrnes, as Personal Representatives of the Estate of Muriel T. Farr,<br><br>          Plaintiffs,<br><br>vs.<br><br>Michael E. Kavoukjian, Esq. and WHITE & CASE, LLP,<br><br>          Defendants. | Civil Action No. 2:19-cv-2098-RMG<br><br>**PLAINTIFFS' MOTION TO COMPEL DEFENDANTS TO PRODUCE DOCUMENTS** |

TO: D. JAY DAVIS, ESQ. AND KATE METTLER, ESQ., COUNSEL FOR DEFENDANTS:

**NOTICE**

YOU WILL PLEASE TAKE NOTICE THAT under FED. R. CIV. P. 34; 37(a)(1); 37(a)(3)(B)(iv); 37(a)(4); and Local Rule 37.01 (D.S.C.), Plaintiffs move for an Order compelling Defendant, WHITE & CASE, LLP ("White & Case") and Defendant, Michael E. Kavoukjian, Esq. ("Mr. Kavoukjian") (collectively "Defendants") to produce documents being withheld improperly on grounds of privilege or protection.

**MOTION**

Pursuant to FED. R. CIV. P. 34; 37(a)(1); 37(a)(3)(B)(iv); 37(a)(4); and Local Rule 37.01 (D.S.C.), Plaintiffs move for an Order compelling White & Case and Mr. Kavoukjian to produce documents from the underlying Probate Litigation, presently being improperly withheld on assertions of privilege or protection, because during the underlying Probate Lawsuit the Farr Stepchildren and their counsel waived any privilege or protection for the subject documents when

they voluntarily produced and relied upon an August 19, 2016 email between Mr. Kavoukjian and Mr. Land. This email included Mr. Kavoukjian's opinion work-product, including his assessment on the legal basis (or lack thereof) of Ms. Muriel Farr's use of the subject IRA as related to the Farr Stepchildren's creditors claims and his analysis of Ms. Farr's distributions from the IRA over an eight-year period. See (ECF # 1-3) ("the Kavoukjian-Land email"). In addition to producing the Kavoukjian-Land email, the Farr Stepchildren and their counsel relied upon and otherwise made testimonial use of the information in the Kavoukjian-Land email in the underlying Probate Litigation. Their economic expert, Leroy E. Strickland, II, CPA ("Mr. Strickland"), used information from the Kavoukjian-Land email as a basis for his expert opinions, and gave testimony during his deposition about the content and his reliance on the email, including having it marked as an exhibit to his deposition.

Because South Carolina is a "complete waiver" jurisdiction, waiver of work product protection concerning the Kavoukjian-Land email is a complete waiver of Mr. Kavoukjian's and Mr. Land's work product protection. To be clear, Plaintiffs do not seek disclosure of work product developed by defense counsel in defending the legal malpractice claims in this case.

## MEMORANDUM IN SUPPORT OF MOTION

### Summary of the Arguments

1.   Work product protection for the documents and communications exchanged between Mr. Kavoukjian and Stephen B. Land, Esq. was waived when the Kavoukjian-Land email was voluntarily produced and relied upon to support the Farr Stepchildren's claims in the underlying Probate Litigation.

### Procedural Background

On July 26, 2019, this lawsuit was commenced by the filing of the Summons (ECF #3) & Complaint (ECF # 1). Under the Second Amended Scheduling Order (ECF # 30), discovery is to

be completed no later than September 30, 2020, and the case is subject to being called for trial on or after January 1, 2021.

On May 5, 2020, Defendants were served with "Plaintiff James Byrnes' Discovery Requests to Defendants (Dated May 5, 2020)," filed with this Motion as Exhibit 1.

On July 20, 2020, Defendants served Plaintiffs with "Defendant White & Case, LLP's and Defendant, Michael E Kavoukjian, Esq.'s Answers to Plaintiff James Byrnes's Interrogatories" and "Defendant White & Case, LLP's and Defendant, Michael E Kavoukjian, Esq.'s Answers to Plaintiff James Byrnes's Requests for Production," copies of which are filed with this Motion as Exhibit 2 and Exhibit 3. Defendants' responses to Plaintiff, James Byrnes's discovery requests, including Defendants' responses to Interrogatory Nos. 5, 7, and 8, and Defendants' responses to Request for Production No. 2, which withheld responsive information and documents asserting claims of attorney-client privilege, work product protection, joint defense privilege, etc. At 8:44 PM on July 21, 2020, Defendants produced 23,340 pages of documents. Included in Defendants' production were 9 pages of documents with redacted text, labeled WCMK 023219 – WCMK 023225 and WCMK 23301 – WCMK 23305, filed with this motion as Exhibit 4 and referred to as "the Redacted Documents."

On July 28, 2020, counsel for White & Case received a letter from counsel for Plaintiffs under Local Rule 7.02, D.S.C., pointing out deficiencies in Defendants' discovery responses, demanding production of the documents and information Defendants are withholding under claim of privilege or protection, and seeking to resolve these discovery disputes. This letter includes a lengthy discussion explaining the factual and legal basis for waiver of any privilege or protection on the subject documents. A copy of this letter is filed is filed with this Motion as Exhibit 5.

On August 4, 2020, counsel for White & Case sent a letter to counsel for Plaintiffs

maintaining Defendants' position that voluntarily disclosing work product protected information during the underlying Probate Lawsuit somehow did not constitute a waiver of privilege or protection. A copy of this letter is filed is filed with this Motion as Exhibit 6.

On August 5, 2020, Defendants belatedly produced a 96-page Privilege Log, a copy of which is filed with this Motion as Exhibit 7, purporting to identify several hundred additional documents (emails) that Defendants are withholding under claim of privilege or protection.

The parties did not resolve the dispute over Defendants' waiver of work product protection.

### **Standard of Review and Controlling Rules of Civil Procedure**

"[A] district court has wide latitude in controlling discovery and ... its rulings will not be overturned absent a clear abuse of discretion." Ardrey v. United Parcel Serv., 798 F.2d 679, 682 (4th Cir. 1986) (citations omitted). "A motion to compel discovery is addressed to the sound discretion of the district court." LaRouche v. Nat'l Broad. Co., 780 F.2d 1134, 1139 (4th Cir. 1986); see also Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 929 (4th Cir. 1995). "The latitude given the district court extends as well to the manner in which it orders the course and scope of discovery." Ardrey, 798 F.2d at 682 (citations omitted).

Federal Rule of Civil Procedure Rule 34(a) provides in part,

(a)     In General. A party may serve on any other party a request within the scope of Rule 26(b):

> (1) to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control:
>
>> (A) any designated documents or electronically stored information—including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form;

Federal Rule of Civil Procedure Rule 26(b) provides in part,

(3) <u>Trial Preparation</u>: Materials.

(A) <u>Documents and Tangible Things</u>. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:

(i) they are otherwise discoverable under Rule 26(b)(1); and

(ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

Federal Rule of Evidence 502 concerning Attorney-Client Privilege and Work Product;

Limitations on Waiver, provides:

(c) **Disclosure Made in a State Proceeding**. When the disclosure is made in a state proceeding and is not the subject of a state-court order concerning waiver, the disclosure does not operate as a waiver in a federal proceeding if the disclosure:

(1) would not be a waiver under this rule if it had been made in a federal proceeding; or

(2) is not a waiver under the law of the state where the disclosure occurred.

FED. R. EVID. 502

Federal Rule for Civil procedure 37(a) governs motion to compel discovery responses.

Rule 37(a)(3)(B) provides that a party may move for an order compelling an answer, designation, production or inspection if a deponent fails an answer a question asked under Rule 30 or 31 or a corporation or other entity fails to make a designation under Rule 30(b)(6). For purposes of this subdivision (a), an evasive or incomplete answer, or response will be treated as a failure to disclose, answer or respond. FED. R. CIV. P. 37(a)(4). The burden on a party resisting discovery must show specifically how each discovery request is not relevant or is otherwise objectionable.

<u>United States v. Berkeley Heartlab, Inc.</u>, No. 9:11-CV-1593-RMG, 2017 WL 3764353, at *1

(D.S.C. Aug. 29, 2017) (citing McLeod, Alexander, Powell & Apffel, P.C. v. Quarles, 894 F.2d 1482 (5th Cir. 1990).

**ARGUMENTS**

**I.     Work product protection was waived when the Kavoukjian-Land email with opinion work product was voluntarily produced and used in expert testimony to support the Farr Stepchildren's claims in the underlying Probate Litigation.**

Defendants should be compelled to produce unredacted copies of the Redacted Documents and the documents listed on the Privilege Log withheld from production on the basis of claimed work product protection (collectively "Waived Work Product Documents"). This is because the Farr Stepchildren and their counsel in the underlying Probate Litigation waived any privilege or protection for the Waived Work Product Documents when, as plaintiffs, they voluntarily produced the Kavoukjian-Land email to then-defendants, Kathy St. John Haney and James P. Byrnes, as Personal Representatives of the Estate of Muriel T. Farr. Filed with this Motion are three sample copies of the Kavoukjian-Land email with a variety of bates labels and exhibit stickers showing its production and use during the underlying Probate Litigation. See (Kavoukjian-Land email with no exhibit sticker, Exhibit 8; Kavoukjian-Land email with exhibit sticker labeled "Defendants 49," Exhibit 9; and Kavoukjian-Land email with exhibit sticker labeled "Defendant's Exhibit 3, Strickland," Exhibit 10).

The Kavoukjian-Land email was originally transmitted between Mr. Kavoukjian and Mr. Land, both of whom were lawyers representing separate clients with arguably common interests. Defendants admit in their interrogatory responses they represented "John Farr, C. Sims Farr, Jr., and Randolph Farr in an estate administration matter concerning the Estate of Muriel T. Farr[.]" (See e.g., Exhibit 2, p. 12). Defendants' discovery responses show Mr. Land represented Virginia Farr Ramsey in the underlying probate matters. (See e.g., Exhibit 2, p. 18). The original

Page 6 of 12

Kavoukjian-Land email was a communication between counsel for two separately represented parties, and arguably subject to the work product doctrine and its common interest privilege exception in that Probate Litigation.

The Kavoukjian-Land email constitutes opinion work product because it contains Mr. Kavoukjian's "mental impressions, conclusions, opinions, or legal theories . . . concerning the litigation." See Rule 26(b)(3), SCRCP.  In the Kavoukjian-Land email, Mr. Kavoukjian expresses his analysis "*re the IRA (we don't have full information for every year)*."  Mr. Kavoukjian further concludes and expresses his opinion and legal theory that "*Unfortunately, **Muriel had a technical legal right to take these amounts** (her moral duty is another matter*)."  (See Exhibit 8, Exhibit 9, and Exhibit 10.)  The Kavoukjian-Land email also contains Mr. Kavoukjian's legal analysis on the value of the IRA, and his opinions and assessments on Ms. Farr's withdrawals from the IRA for the years 2008, 2009, 2010, 2011, 2012, 2013, 2014, and 2015 and comparisons of those withdrawals to his views on the Minimum Required Deductions under the governing IRS regulations. Id.

The Farr Stepchildren and their counsel, while pursuing claims, produced the Kavoukjian-Land email to their adversaries, Ms. Haney and Mr. Byrnes, who were defendants in the underlying Probate Litigation.  In addition to the production of the opinion work product material to their adversaries, the Farr Stepchildren and their counsel made testimonial use of the information in the Kavoukjian-Land email through their economic expert, Leroy E. Strickland, II, CPA.  The Kavoukjian-Land email was used as an exhibit during his deposition and Mr. Strickland was questioned extensively on Mr. Kavoukjian's opinions and legal analysis expressed in the Kavoukjian-Land email, and Mr. Strickland's express reliance on Mr. Kavoukjian's information and opinions.  (See Kavoukjian-Land email with exhibit sticker labeled "Defendant's Exhibit 3,

Strickland," Exhibit 10); (Strickland, Roy, CPA, excerpts from deposition transcript dated Feb. 8, 2018, 38:1-48:14, 78:24-79:18, 85:3-85:22, 124:17-125:3, filed with this Motion as Exhibit 11).

Mr. Strickland testified,

> 79:6   A.   I took it straight from the
> 79:7   statements.  The only other source is I did
> 79:8   compare it to that **initial email** that you showed
> 79:9   me earlier on this one year.
> 79:10      Q.   **From Mike Kavoukjian**, Exhibit Number
> 79:11  3?
> 79:12      A.   **Yes**, and I compared it to one other
> 79:13  item, and it might be the tax return, because I
> 79:14  have three lines down here.  One of them is my
> 79:15  calculated amount that pulls up here, and then I
> 79:16  think I have the numbers for here, and I believe
> 79:17  it's the number for the tax return.  I was looking
> 79:18  at differences.

(See Strickland, Roy, CPA, 79:6-79:18, Feb. 8, 2018, Exhibit 11).

> 85:3       Q.   In addition to the **letter from Mike**
> 85:4   **Kavoukjian** that sets forth some basic assumptions,
> 85:5   and in addition to the reliance on the monthly
> 85:6   statements from State Street that you've been
> 85:7   pointing to, were there any other assumptions that
> 85:8   you were asked to use in formulating your three
> 85:9   opinions?
> 85:10  A.   When you talk about this letter,
> 85:11  you're only talking about the beginning balance,
> 85:12  right, the $2 million?  I didn't use anything
> 85:13  else.  I compared to this.  My cash disbursements
> 85:14  are based on what happened in the account.  So the
> 85:15  only number I used here was the 2,266,711, because
> 85:16  I did not have a December statement from the
> 85:17  account.
> 85:18      Q.   For the sake of a clear record, you
> 85:19  are referring to Defendant's Exhibit Number 3, **the**
> **85:20  email from Mike Kavoukjian** in which he says that
> 85:21  there was a balance in 2008 of that $2,266,711?
> 85:22      A.   **Yes, sir.**

(See Strickland, Roy, CPA, 85:3-85:22, Feb. 8, 2018, Exhibit 11).

>    124:17  Q.  I just want to really carefully tie
>    124:18  together, this DHG 1045 shows that number, $2,266,
>    124:19  771, and is that the same number that you used on
>    124:20  your Exhibit 1?
>    124:21     A.  Yes. I'm assuming it's the same
>    124:22  account, but I haven't tied any of that in. **My**
>    124:23  **number came from the email, so.**
>    124:24     Q.  **The Mike Kavoukjian email?**
>    124:25     A.  **Yeah**. Yeah. I want to make -- if you
>    125:1  look at the footnote number 2, it says the 2007
>    125:2  year end account balance is based on an email from
>    125:3  Michael E.

(See Strickland, Roy, CPA, 124:17-125:3, Exhibit 11).

Mr. Strickland's testimony establishes that information from the Kavoukjian-Land email was a material aspect of his expert opinions used in support of the Farr Stepchildren's claims in the underlying Probate Litigation. Not only was the email produced to adversaries, but according to Mr. Strickland's testimony, he relied upon the opinion work product information in the Kavoukjian-Land email in forming his expert opinions.

Because South Carolina and the Fourth Circuit are "complete waiver" jurisdictions, waiver of work product protection concerning the Kavoukjian-Land email is a complete waiver of Mr. Kavoukjian's and Mr. Land's work product protection. Defendants should be compelled to produce all the Waived Work Product Documents from the South Carolina Probate litigation.

> Work-product immunity is waived if the client, the client's lawyer, or another authorized agent of the client: ... (4) discloses the material to third persons in circumstances in which there is a significant likelihood that an adversary or potential adversary in anticipated litigation will obtain it.

Craft v. S.C. State Plastering, LLC, No. 9:15-CV-5080-PMD, 2017 WL 121854, at *2 (D.S.C. Jan. 12, 2017) (citing Continental Cas. Co. v. Under Armour, Inc., 537 F. Supp. 2d 761, 769 (D. Md. 2008) (quoting RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 91 (Am. Law Inst. 2000))) (internal quotes and citations omitted). See also, In re Fluor Intercontinental, Inc., 803 F.

App'x 697, 701 (4th Cir. 2020); Wellin v. Wellin, No. 2:13-CV-1831-DCN, 2016 WL 123066, at *6 (D.S.C. Jan. 8, 2016), report and recommendation adopted as modified, No. 2:13-CV-01831-DCN, 2016 WL 5349086 (D.S.C. Sept. 26, 2016) ("The attorney and client can forfeit this advantage, but their actions effecting the forfeiture or waiver must be consistent with conscious disregard of the advantage that is otherwise protected by the work product rule."); Wells v. Liddy, 37 F. App'x 53, 66 (4th Cir. 2002) (testimonial use of work product materials waives work product protection). The Farr Stepchildren and their counsel used the information in the Kavoukjian-Land email in expert testimony advocating their position in the underlying Probate Lawsuit. Such conduct constitutes waiver of opinion work product protection.

In Doe v. United States, 662 F.2d 1073, 1081 (4th Cir. 1981), the United States Court of Appeals for the Fourth Circuit held the protection of the work product doctrine can be lost if one's actions are "consistent with a conscious disregard of the advantage that is otherwise protected by the work product rule" and "[w]hen an attorney freely and voluntarily discloses the contents of otherwise protected work product to someone with interests adverse to his or the client, knowingly increasing the possibility that an opponent will obtain and use the material, he may be deemed to have waived work product protection." Id. (citing In re Steinhardt Partners, L.P., 9 F.3d 230 (2nd Cir. 1993) (voluntary disclosure of work product to a regulator investigating a possible violation waives the work product immunity, because the regulator is an adversary under the circumstances)). See also, In re Martin Marietta Corp., 856 F.2d 619, 626 (4th Cir. 1988) ("actual disclosure of pure mental impressions may be deemed waiver" of opinion work product).

> As Judge Norton noted in Honewater, et al. v. Roberts Pharmaceutical Corp., 152 F.R.D. 513 (D.S.C. 1994), the purpose of the work product rule "is not to protect the evidence from disclosure to the outside world but rather to protect it only from the knowledge of opposing counsel and his client, thereby preventing its use against the lawyer gathering the materials." (quoting 8 C. Wright, A. Miller & R. Marcus,

> *Federal Practice and Procedure* § 2024 (1993 Supplement)). Thus, the result should be that disclosure of a document to third persons does not waive the work product immunity <u>unless it has substantially increased the opportunities for potential adversaries to obtain the information</u>. Id. Determining the recipients of the document is important to the analysis of waiver in the context of evaluating an assertion of work product protection.

Wellin v. Wellin, No. 2:13-CV-1831-DCN, 2018 WL 2604867, at *5 (D.S.C. May 25, 2018) (emphasis added).

The Kavoukjian-Land email and the information from that email were produced in the underlying Probate Litigation to the Farr Stepchildren's adversaries, and used extensively by their economic expert, Roy Strickland, CPA, in support of his expert testimony. All work product protection was completely waived as to Mr. Kavoukjian's and Mr. Land's work product. Defendants should be compelled to produce all the Waived Work Product Documents.

## **CONCLUSION**

Plaintiffs respectfully request the Court issue an Order compelling Defendants to produce all the Waived Work Product Documents immediately and well before the end of the discovery cut off on September 30, 2020.

[SIGNATURE BLOCK ON FOLLOWING PAGE]

Respectfully submitted,

PENDARVIS LAW OFFICES, P.C.

s/ Thomas A. Pendarvis
Thomas A. Pendarvis (Fed. Id. 5785)
Christopher W. Lempesis, Jr. (Fed. Id. 11462)
710 Boundary Street, Suite 1-A
Beaufort, SC 29902
843.524.9500
Thomas@PendarvisLaw.com
Chris@PendarvisLaw.com

*Counsel for Plaintiffs, Kathy Haney and James Byrnes, as Personal Representative of the Estate of Muriel T. Farr*

Beaufort, South Carolina

August 10, 2020