**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| Katherine St. John Haney and James Byrnes, as Personal Representatives of the Estate of Muriel T. Farr )<br><br>Plaintiffs, )<br><br>v. )<br><br>Michael E. Kavoukjian, Esq., and White & Case, LLP )<br><br>Defendants. ) | Civil Action No. 2:19-cv-2098-RMG<br><br><br>**ORDER AND OPINION** |

Before the Court is a partial motion for summary judgment and a motion to strike filed by Plaintiffs Katherine St. John Haney and James Byrnes as Personal Representatives of the Estate of Muriel T. Farr (Dkt. Nos. 78, 89), and a motion for summary judgment filed by Defendants Michael E. Kavoukjian, *Esq.* and White & Case, LLP. (Dkt. No. 79). For the reasons set forth below, Plaintiffs' partial motion for summary judgment is denied, Plaintiffs' motion to strike is granted in part, denied in part, and Defendants' motion for summary judgment is granted in part, denied in part.

## I.    Background

This matter is a breach of fiduciary duty and professional negligence action. Plaintiffs, Katherine St. John Haney and James Byrnes are the children of Muriel T. Farr and now serve as the Personal Representatives of the Estate of Muriel T. Farr ("the Estate"). Plaintiffs bring the instant action against Defendants Michael E. Kavoukjian, *Esq.* ("Mr. Kavoukjian") and White & Case, LLP ("White & Case"). (Dkt. No. 1). Plaintiffs' claims against Defendants arise out of an

underlying probate lawsuit and Defendants' joint representation of Sims C. Farr ("Sims") and Muriel T. Farr ("Muriel") for estate planning.[1]

Sims was an estates lawyer and partner at White & Case. (Dkt. Nos. 78 at 6; 79 at 2; 78-2). White & Case began providing estate planning services to Sims prior to 1990. (Dkt. No.79-20). In 1990, Sims (age 70) and Muriel (age 55) got married. (Dkt. Nos. 78 at 7; 79-1 at 8; 79-21 at 3, 78-11; 78-9). Sims and Muriel each had children from prior marriages. The children of Sims are: C. Sims Farr, Jr., John Farr, Randolph Farr, and Virginia Farr Ramsey ("the Farr Children"). The children of Muriel are: Plaintiff Katherine St. John Haney, Plaintiff James Byrnes, Michael Byrnes, and John Byrnes ("the Byrnes Children"). (Dkt. Nos. 78 at 6; 79 at 2). After Sims and Muriel were married, they were jointly represented by Defendants for estate planning purposes until April 2005. (Dkt. No. 79-2 at 3-4). While providing joint representation to Sims and Muriel, Defendants also took on representation of John Farr and his wife Olivia Farr. (Dkt. No. 78-7 at 17-19). Ultimately, Defendants' representation of Muriel and Sims ended in April 2005. The representation ended due to a potential conflict of interest between White & Case and its lawyers' representation of Muriel and Sims on the one hand and John Farr and Olivia Farr on the other hand. (Dkt. No. 79-7 at 7-8). In addition, the representation ended in part due to Mr. Kavoukjian's concerns of Sims being unwell at this point and potential issues of Muriel's undue influence over Sims. (*Id.*). In April 2005, Sims and Muriel obtained new estate planning counsel in South Carolina. (Dkt. No. 79-8 at 19-20, 23-25, 27-28).[2]

---

[1] The underlying lawsuit is captioned at *John Farr et al., v. Katherine St. John Haney and James Byrnes, as Personal Representatives of the Estate of Muriel T. Farr*, CA No. 2015-ES-08-00550. (Dkt. No. 80-23).

[2] David Sojourner, *Esq.*, jointly represented Sims and Muriel for estate planning purposes beginning in April 2005. (Dkt. No. 79-9 at 3-4).

Sims and Muriel's estate plan included extensive planning around the allocation of Sims' IRA at his death. Defendants maintain the plan was for Sims to designate Muriel as the beneficiary of the IRA for her life for tax reasons with the understanding and agreement that after his death she would roll over the IRA into her name to allow additional tax-deferred growth; that she would only draw upon the IRA as required by law by taking out the required minimum distribution ("RMD"), or to ensure her basic needs were met; and that she would designate the Farr Children as the beneficiaries of the IRA at her death. (Dkt. No. 79-1 at 4). Plaintiffs maintain that Sims gifted the IRA outright to Muriel when he died, giving her "unfettered discretion" to do what she wanted with the IRA. Plaintiffs maintain that Sims hoped Muriel would give whatever remained in the IRA to the Farr Children upon Muriel's death. (Dkt. No. 78 at 4). Sims died in 2007, followed by Muriel in 2015. (Dkt. Nos. 78-2; 78-32). Muriel named the Farr children as the beneficiaries of the IRA that they were to inherit at her death.

Mr. Kavoukjian received a Draft 706 Form prepared by counsel for the Estate that purported to allocate all estate taxes to the IRA. (Dkt. Nos. 80-8; 80-7). On March 29, 2016, Mr. Kavoukjian filed a Statement of Creditor's Claim against the Estate and on behalf of the Farr Children in the Probate Court in Berkeley County, South Carolina. (Dkt. No. 79-15). The Statement of Creditor's Claim sought 3.6 million dollars from the Estate for assets allegedly converted and transferred due to the Estate's fraud and misrepresentation. (*Id.*). On July 28, 2016, the Estate filed a Notice of Disallowance of Claim. (Dkt. No. 80-22).[3] On August 29, 2016, the Farr Children filed a probate lawsuit ("Underlying Lawsuit") against the Estate asserting claims for: (1) breach of fiduciary duty; (2) constructive trust; (3) money had and received; (4) fraud/constructive fraud; (5)

---

[3] Kenneth B. Wingate, *Esq*. and Karen Thomas, *Esq*. served as counsel for the Estate in the litigation of the Underling Lawsuit. (Dkt. No. 80-22).

conversion; (6) declaratory judgment; and (7) fraud under S.C. Code Ann. § 62-1-106. (Dkt. No. 80-23).[4]  In the Underlying Lawsuit, the Farr Children claimed Muriel breached fiduciary duties by taking distributions exceeding the RMD from the IRA between 2008 until 2015, and by allocating all of the estate taxes on the Estate against the IRA. (*Id.*). On January 25, 2019, the Underlying Lawsuit settled. The Estate paid the Farr Children $600,000.00 in full satisfaction of the creditor's claim filed against the Estate. (Dkt. No. 78-40). In addition, the Estate paid attorney's fees in the amount of $550,000.00. (Dkt. No. 79-1 at 6).

On July 26, 2019, Plaintiffs filed the instant suit bringing claims against Defendants for (1) breach of fiduciary duties and (2) professional negligence. (Dkt. No. 1). Plaintiffs allege Defendants breached duties of confidentiality and loyalty among other professional duties owed to Muriel as a former client when Mr. Kavoukjian pursued claims against the Estate on behalf of the Farr Children. (*Id.* at ¶¶ 19, 50). Plaintiffs allege White & Case is vicariously and directly liable for Mr. Kavoukjian's actions as a lawyer at the law firm. (*Id.* at ¶¶32-35). Defendants deny Plaintiffs' allegations and raise several affirmative defenses including the claims are barred by the statute of limitations; there was no duty of confidentiality and loyalty owed to Muriel; lack of proximate cause; laches and estoppel. (Dkt. No. 7 at ¶¶ 34-37; 42, 46). The parties filed cross-motions for summary judgment (Dkt. Nos. 78; 79) and the motions are fully briefed. (Dkt. Nos. 88; 90; 96; 97). Plaintiffs filed a motion to strike testimony in support of Defendants' motion for summary judgment. (Dkt. No. 89). The motion is fully briefed. (Dkt. Nos. 100; 102). All three motions are ripe for the Court's review.

## II.   <u>Legal Standard</u>

---

[4]  Thomas H. Pope III, *Esq.* filed the Underlying Lawsuit on behalf of the Farr Children. (Dkt. No. 80-23).

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact" and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In other words, the Court should grant summary judgment "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.,* 810 F.2d 1282, 1286 (4th Cir. 1987). "In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The party seeking summary judgment bears the initial burden of demonstrating to the Court that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in its pleadings. *See id.* at 324. Rather, the non-moving party must demonstrate that specific, material facts exist that give rise to a genuine issue. *See id.* Under this standard, "[c]onclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence'" in support of the non-moving party's case. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (quoting *Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 287 (4th Cir. 1999)).

## III.  <u>Discussion</u>

### A.  Cross-Motions for Summary Judgment (Dkt. Nos. 78; 79)

The parties filed cross-motions for summary judgment. (Dkt. Nos. 78; 79). Plaintiffs move for partial summary judgment as to their breach of fiduciary duty claim related to Mr. Kavoukjian's filing of the Statement of Creditor's Claim. (Dkt. No. 78 at 1-2). Defendants move for summary judgment on several grounds. (Dkt. No. 79). The Court will discuss each issue on summary judgment in turn.

*i. Statute of Limitations*

Defendants move for summary judgment on the ground Plaintiffs' claims for breach of fiduciary duty and professional negligence are barred by the applicable three-year statute of limitations period defined by South Carolina Code Annotated § 15-3-530. (Dkt. No. 79-1 at 19-28). Defendants argue Plaintiffs filed the Complaint outside the statute of limitations period when Plaintiffs had inquiry notice and actual notice of Defendants' alleged wrongful conduct prior to March 26, 2016. (Dkt. No. 1). Plaintiffs argue their claims accrued at the earliest on April 14, 2016 as this was the date Plaintiffs could sustain a financial injury resulting from Defendants' wrongful conduct. (Dkt. No. 88 at 8-10). Plaintiffs argue that before a claim for legal malpractice may accrue and the limitations begins to run, the claimant must sustain financial losses and discover those financial losses may have been caused by the wrongful conduct of another person. (*Id.*).

South Carolina Code Annotated § 15-3-530 states that legal malpractice claims have a three-year statute of limitations period. *See* S.C. Code Ann. § 15-3-530. The statute of limitations period also applies to breach of fiduciary duty claims. *Kreutner v. Davis*, 465 S.E.2d 88 (S.C. 1995). Pursuant to the "discovery rule", the statute of limitations period commences when a person of common knowledge and experience is put on notice that some claim against another party might exist. *Stokes-Craven Holding Corp. v. Robinson*, 787 S.E.2d 485, 489 (2016). The statute of limitations runs from the date the injured party either knows or should have known by the exercise of reasonable diligence that a cause of action arises from the wrongful conduct. *Dean v. Ruscon Corp.*, 468 S.E.2d 645, 647 (S.C. 1996) (citing *Johnston v. Bowen*, 437 S.E.2d 45 (1993)).

The South Carolina Supreme Court has interpreted the exercise of reasonable diligence to mean that the injured party must act with some promptness where the facts and circumstances of

an injury might place a reasonable person of common knowledge and experience on notice that a claim against another party might exist. *Dean*, 468 S.E.2d at 648. The statute of limitations begins to run at this point, not when advice of counsel if sought, or a full-blown theory of recovery is developed. *Dorman v. Campbell*, 500 S.E.2d 786, 789 (S.C. Ct. App. 1998). The date on which the discovery should have been made is an objective, not a subjective question. *Kreutner v. Davis*, 465 S.E.2d 88, 90 (S.C. 1995); *Burgess v. American Cancer Soc.*, 386 S.E.2d 798 (S.C. Ct. App. 1989) (explaining the statute of limitations does not begin when a person obtains actual knowledge of either the potential claim or the facts giving rise thereto). Further, the fact that the injured party may not comprehend the full extent of the damage is immaterial. *Id.* All that is required is that the party have inquiry notice that some claim might exist. *Binkley v. Burry*, 573 S.E.2d 838, 843 (S.C. Ct. App. 2002).

Plaintiffs filed the Complaint on July 26, 2019. (Dkt. No. 1). Plaintiffs claim Defendants breached duties of confidentiality and loyalty owed to Muriel when Mr. Kavoukjian filed the Statement of Creditor's Claim on behalf of the Farr Children, used confidential information obtained during the representation of Muriel to the disadvantage of the Estate, and disclosed confidential information to the Farr Children. (Dkt. No. 81-1 at 3-8). On June 21, 2019, the parties entered an Amended Tolling Agreement that amended the parties' original Tolling Agreement, which was effective on March 27, 2019. (Dkt. No. 79-19 at 1). The Amended Tolling Agreement applied to claims "[Mr.] Kavoukjian and/or [White & Case] breached fiduciary duties arising from their prior representation of [Muriel]" along with any "related allegations." (*Id.*). The Amended Tolling Agreement did not operate to revive any claims against Defendants that were already time-barred, nor did it operate as a waiver of any claim or defense available to the parties. (*Id.* at 3). The Amended Tolling Agreement expired on July 25, 2019. (*Id.* at 2). The Court will review the

record to determine whether Plaintiffs knew or should have known of their claims against Defendants prior to March 27, 2019.

The record evidence indicates Karen Thomas, *Esq*., counsel for the Estate, had knowledge of Defendants' alleged wrongful conduct prior to March 27, 2016. On October 30, 2015, Ms. Thomas informed Steven Land, *Esq*. counsel for Virginia Farr Ramsey, that the amount of estate tax apportioned to the IRAs payable to the Farr Children would be as much as 100% of the value of those IRAs. (Dkt. No. 80-5). On February 16, 2016, Ms. Thomas emailed a Draft 706 Form to Mr. Land indicating the IRA would be depleted by the estate taxes in the amount of $425, 691.84. (Dkt. No. 80-8). Mr. Land shared the Draft 706 Form with Virginia Farr Ramsey and Mr. Kavoukjian. (Dkt. No. 80-7). On March 14, 2016, Ms. Thomas wrote Plaintiff Katherine Haney advising various estate tax valuations that would impact the amount of taxes owed. (Dkt. No. 80-9). Two days later, Plaintiff Katherine Haney responded to Ms. Thomas, "your email seems to suggest we should sell stock and pay taxes from [Muriel's] estate . . . [w]hy would we not pay from IRA? Do we have risk here from the Farr children?" (Dkt. No. 80-9 at 2-4). Ms. Thomas confirmed there was a "risk from the Farr children for the way we calculate . . . [Muriel's] estate and the estimated taxes." (*Id.*).

On March 16, 2016, Mr. Kavoukjian emailed a letter to Ms. Thomas. (Dkt. No. 80-10). In the letter, Mr. Kavoukjian states that he is counsel to John Farr "one of the beneficiaries named by [Muriel] . . . of the Rollover IRA originally established by [Sims]." (Dkt. No. 80-10 at 1). Mr. Kavoukjian states he was given a Draft 706 Form, federal estate tax return ("the Return") for the Estate showing a tax due of $425,691.84. (*Id.*). Mr. Kavoukjian wrote that if the Personal Representatives of the Estate filed the Return and allocated the estate taxes as planned, it would

be a "gross violation" of fiduciary duties that would result in "serious financial damage to the Farr Children for which the Personal Representatives would be personally liable." (*Id.*).

On March 16, 2016, David Sojourner, *Esq*. and Ms. Thomas, counsel for the Estate, exchanged emails addressing Mr. Kavoukjian's letter. (Dkt. No. 80-11). Mr. Sojourner expressed that he was concerned about Mr. Kavoukjian's potential conflict of interest as an attorney with White & Case, Sims' old firm. Mr. Sojourner believed that White & Case may have represented Muriel in the past and the rules prohibited White & Case from taking a case "adverse to a prior client if it involves the same or substantially similar matter." (*Id.*). Mr. Sojourner noted Defendants "have information in their file relating to intent that is potentially attorney-client protected information." (*Id.*). On March 18, 2016, Ms. Thomas emailed South Carolina lawyers stating, "we are about to get into litigation on the tax allocation clause under one of our [w]ills . . ." and "would either of you be willing to assist?" (Dkt. No. 80-12). On the same day, Ms. Thomas also emailed Plaintiffs explaining she received notice from White & Case about concerns the Estate was not being fair to the Farr Children. (Dkt. No. 80-13). In a letter dated March 24, 2016, Mr. Kavoukjian explained to Ms. Thomas that if the estate tax and valuation plan was followed, a claim would be filed against the Estate. (Dkt. No. 80-14).

In a letter dated March 21, 2019, Thomas Pendarvis, *Esq*., Plaintiffs' counsel in the instant case, wrote White & Case and requested the parties enter a tolling agreement. (Dkt. No. 79-17). The letter threatened to file a lawsuit against Defendants for professional liability arising out of Defendants' actions pursuing a claim against the Estate and disclosing confidential information related to his representation of Muriel. (*Id.*).[5]

---

[5] Mr. Pendarvis' letter states that an unfiled "Verified Complaint" was attached to the letter. (Dkt. No. 79-15).

Upon a careful review of the record and viewing the evidence in a light most favorable to Plaintiffs, there is no issue of material fact that Plaintiffs, imputed with knowledge from their attorneys, were aware of potential claims against Defendants for breach of fiduciary duty and legal professional negligence as of March 18, 2016 or by March 24, 2016 at the latest.  (Dkt. Nos. 80-10, 80-11, 80-12, 80-14).  The knowledge to an attorney is also knowledge to the client. When a lawyer or agent is acting within the scope of his representation, the lawyer's knowledge is imputed to his client as principal for purposes of determining the date the statute of limitations began to run.  *Michael v. Kiawah Island Real Estate, LLC*, No. 2:11-CV-02709-RMG, 2012 WL 3945483, at *3 (D.S.C. Sept. 10, 2012) (citing *Faulkner v. Millar*, 460 S.E.2d 378); *Crystal Ice Co. of Columbia, Inc., v. First Colonial Corp.*, 257 S.E.2d 496 (1979) ("It is well established that a principal is affected with constructive knowledge of all material facts of which his agent receives notice while acting in the scope of his employment."); *Wellin v. Wellin*, No. 2:13-CV-1831-DCN, 2014 WL 234216, at *4 (D.S.C. Jan. 22, 2014).  The parties' tolling agreement operated to toll claims effective March 27, 2019 to the extent such claims had not already expired.  All claims Plaintiffs had notice of on or before March 27, 2016 are barred as untimely under the applicable statute of limitations.  Defendants' motion for summary judgment is granted as to the statute of limitations defense, which essentially narrows Plaintiffs' claims to Mr. Kavoukjian's filing of the Statement of Creditor's Claim on March 29, 2016.

ii.  <u>Whether Defendants Breached the Duty of Confidentiality to Muriel</u>

Defendants move for summary judgment on the ground no duty of confidentiality is owed to Muriel because Defendants jointly represented Sims and Muriel for estate planning purposes. (Dkt. No. 79-1 at 29-34).  In this case, Plaintiffs maintain Defendants breached the duty of confidentiality owed to Muriel by disclosing information to the Farr Children related to

Defendants' representation of Muriel and by using that information to prosecute claims against Muriel's Estate by filing the Statement of Creditor's claim. (Dkt. No. 81-1 at 6).

The South Carolina Supreme Court held there is no attorney-client privilege as to communications between jointly represented estate planning clients, or those claiming under them. *Wilson v. Gordon*, 53 S.E. 79 (1905); *see also Wellin v. Wellin*, 2016 WL 7647565, at * 4 (D.S.C. Sept. 30, 2016). The Rules of Professional Conduct ("RPC") echo the principle set forth in *Wilson*. For instance, RPC 1.7, Comment 28 states:

> "[a] particularly important factor in determining the appropriateness of common representation is the effect on client-lawyer confidentiality and the attorney-client privilege. Regarding the attorney-client privilege, the prevailing rule is that, as between commonly represented clients, the privilege does not attach. Hence, it must be assumed that if litigation eventuates between clients, the privilege will not protect any such communications, and the clients should be so advised."

RPC 1.7, Comment 28.

The RPC allows an attorney to disclose information related to the representation of a client in limited circumstances. For instance, an attorney is permitted to act "adverse" to a client to "to prevent, mitigate, or rectify substantial injury to the financial interests or property of another that is reasonably certain to result or has resulted from the client's commission of a crime or fraud in furtherance of which the client has used the lawyer's services." RPC 1.6(b)(4).

In this case, Defendants jointly represented Sims and Muriel for estate planning purposes. (Dkt. Nos. 79-7 at 3-4; 79-8 at 3-5; 79-2 at 4). Mr. Kavoukjian testified to his knowledge of Sims' intent for Muriel to only withdraw RMDs from the IRA and absent some exigent circumstance, for the IRA to be preserved in a tax effective manner for the Farr Children to inherit at Muriel's death. (Dkt. No. 79-8 at 7-8; *Id.* at 10-11). The Estate's Draft 706 Form purported to allocate all the estate taxes ($425,691.84) against the IRA, virtually depleting it. (Dkt. No. 80-14). At this

juncture, Mr. Kavoukjian acted to mitigate potential financial damage to the Farr Children as beneficiaries of the IRA.

On March 16, 2016, Mr. Kavoukjian proposed to the Estate several changes to the Draft 706 Form to equalize the estate tax allocation amongst the Farr Children and the Byrnes Children. (*Id.*). On March 24, 2016, Mr. Kavoukjian warned the Estate that a claim would be filed against it if the Personal Representatives of the Estate did not agree to adopt the positions set forth in Mr. Kavoukjian's March 16 letter. (Dkt. No. 80-14). Plaintiffs admit that after Muriel's death, the Farr Children were "entitled to know the information concerning the amount of Muriel's withdrawals from the IRA for each year of 2008 through 2015 as they were the new owners of the IRA upon her death." (Dkt. No. 79-2 at 5).

The record evidence demonstrates that Mr. Kavoukjian disclosed information to the Farr Children related to the joint representation of Sims and Muriel that is not protected by attorney-client privilege. According to South Carolina law, there is no attorney-client privilege among jointly represented clients for estate planning matters or to those claiming under them (*i.e.*, the Farr Children and the Byrnes children). *See Wilson*, 53 S.E. 79; RPC 1.7, Comment 28. Mr. Kavoukjian was authorized to disclose information to the Farr Children related to Sims and Muriel's estate plan because Mr. Kavoukjian jointly represented Sims and Muriel and the Farr Children had an interest in the IRA as the named beneficiaries of the IRA upon Muriel's death. (Dkt. No. 79-11 at 16). *See Wilson*, 53 S.E. 79; RPC 1.7, Comment 28.

The record evidence also demonstrates that Mr. Kavoukjian used information related to the joint representation of Sims and Muriel to prevent or mitigate financial harm to the IRA that the Farr Children were supposed to inherit at Muriel's death. Mr. Kavoukjian's conduct is authorized by RPC 1.6(b)(4), which permits an attorney to act "adverse" to a client to "prevent, mitigate, or

rectify substantial injury to the financial interests or property of another that is reasonably certain to result or has resulted from the client's commission of a crime or fraud in furtherance of which the client has used the lawyer's services."   RPC 1.6(b)(4).

Upon a careful review of the record  and viewing the evidence in a light most favorable to Plaintiffs, the Court finds there is no issue of material fact Defendants did not breach a duty of confidentiality owed to Muriel by sharing with the Farr Children estate planning information related to joint representation of Sims and Muriel.  Defendants' motion for summary judgment is granted on the alleged right of confidentiality.

      iii.   <u>Whether Muriel Waived Conflict of Interest, Duty of Loyalty, and Duty of Confidentiality</u>

Defendants move for summary judgment on the ground Muriel waived all conflicts of interest.  Defendants argue Muriel and Sims waived all privileges, duty of confidentiality, duty of loyalty, and Defendants' conflict of interest related to the representation of Sims and Muriel for estate planning purposes in relation to other members of the Farr Family.  (Dkt. No. 79-1 at 27).  Plaintiffs also move for summary judgment as to this issue and contend that White & Case did not obtain Muriel's informed consent to obtain a waiver of conflict of interest to pursue claims adverse to the Estate.  (Dkt. No. 78 at 27).[6]

"Informed consent denotes the agreement by a person to a proposed course of conduct after the lawyer has communicated reasonably adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct."  RPC 1.0(f); *see also* RPC 1.0 Comment 7 ("[o]btaining informed consent will usually require an affirmative

---

[6] Plaintiffs also argue Defendants offer no credible evidence it obtained Muriel's informed consent to waive conflict of interests and pursue adverse claims against the Estate, which is the subject of Plaintiffs' Motion to Strike discussed in Section III(B) of the Court's Order.

response by the client or other person.  In general, a lawyer may not assume consent from a client's or other person's silence . . . ).

The record evidence contains letters written by Sims and Mr. Kavoukjian that discuss waiver.  In a letter dated August 24, 2001, Sims wrote to a lawyer at White & Case that he recently brought his son, John Farr, and his son's wife, Olivia Farr, to White & Case for Mr. Kavoukjian to represent them.  (Dkt. No. 79-4 at 2).  In a letter dated November 26, 2004, Mr. Kavoukjian wrote to Sims expressing that White & Case "ha[s] a potential conflict of interest in representing you and other members of your family.  All parties have waived this conflict, but if you feel more comfortable with another attorney, I understand completely."  (Dkt. No. 81-8).  In a letter dated January 14, 2005, Sims wrote to Mr. Kavoukjian that he intended for Mr. Kavoukjian to serve as "Farr family counsel."  (Dkt. No. 79-5 at 2).  In a letter dated March 7, 2005, Sims disclosed to John Farr, his and Muriel's joint estate plan. (Dkt. No. 79-5 at 5).  Sims wrote that Mr. Kavoukjian expressed concerns regarding a conflict of interest between representation of the Farr Family. (Dkt. No. 79-5 at 6-7).  Sims wrote it "may have involved what he was doing for you, or possibly because [Muriel] is the principal beneficiary and the 4 [children] are not perhaps as much-tho its pretty even."  (*Id.*).  Sims wrote, "[Muriel] has, of course, read and approved this – I've also gone over the basis of the plan with [Virginia] + Randy and, from time to time, Sim[s] [,] [Jr.]."  (*Id.* at 7).

In both the Underlying Lawsuit and the current lawsuit, Mr. Kavoukjian testified to a telephone conversation with Sims and Muriel where they "waived conflicts, privilege, and confidentiality."  (DKt. No. 79-3 at 5-6; 79-8 at 19-20 (explaining that Sims yelled "I waive everything and so does Muriel.").  White & Case testified it was standard business practice for the partner handling a matter to discuss the consequences of multiple representation, the potential

conflicts of interest, and limitations of the duty of confidentiality and loyalty with the client. White & Case testified a waiver of these duties took place. (Dkt. No. 78-7 at 22, 26).[7]

On the other hand, the record evidence demonstrates that Mr. Kavoukjian was unsure whether he ever obtained a waiver from Muriel. He testified that during the timeframe he represented Muriel, he could not recall a private conversation with Muriel where conflicts of interest were discussed, although he believed that would have been covered in the initial discussions when the joint representation began. (*Id.* at 21). White & Case testified that prior to April 1, 2005, during the time frame the firm represented Sims and Muriel, the question of Muriel waiving the duty of loyalty never arose because the firm identified the representation as a potential conflict, but there was no factual scenario where an actual conflict of interest presented itself. (Dkt. No. 78-7 at 25-27).

Upon a careful review of the record, the Court finds there are issues of material fact as to whether Defendants obtained Muriel's waiver as to privilege and Defendants' duties of confidentiality, loyalty, and conflicts of interest related to joint representation. The parties' cross motions for summary judgment as to Muriel's waiver of privilege, duty of loyalty and confidentiality, and conflict of interest are denied.

iv.  Whether Defendants' Filing of the Statement of Creditor's Claim
Breached the Duty of Loyalty to Muriel

Defendants move for summary judgment on the ground Defendants did not breach any duty of loyalty to Muriel because Defendants did not owe Muriel an undivided duty of loyalty relative to the other joint client, Sims. (Dkt. No. 79-1 at 35). Plaintiffs move for summary

---

[7] White & Case testified it was unable to locate the paper file that purports to show Defendants discussed conflicts of interest and limitations on duty of loyalty with Muriel during the joint representation. (Dkt. No. 78-7 at 21).

judgment on this issue and argue that Defendants provided joint estate planning services to Sims and Muriel such that Defendants owe Muriel a duty of loyalty as a former client. Plaintiffs argue Defendants were not permitted to disclose information related to the representation of Muriel to the Farr Children and were not permitted to file a Statement of Creditor's Claim on behalf of the Farr Children adverse to the Estate. (Dkt. No. 78 at 22-24).

RPC 1.9 states lawyers owe duties to former clients. The rule reads in relevant part:

(a) "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing."

(c) "A lawyer who has formerly represented a client in a matter, or whose present or former firm has formerly represented a client in a matter shall not thereafter: (1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or (2) reveal information relating to the representation except as these Rules would permit or require with respect to a client."

*See* RPC 1.9 (a), (c). RPC 1.9, Comment 1 states in pertinent part:

"Nor could a lawyer who has represented multiple clients in a matter represent one of the clients against the others in the same or a substantially related matter after a dispute arose among the clients in that matter, unless all affected clients give informed consent."

RPC 1.9, Comment 1.

In *Spence v. Wingate*, the South Carolina Supreme Court held that lawyers "owe a fiduciary duty to [their] former clients[s], . . . [including] among other obligations, the obligation not to act in a manner adverse to her interests in matters substantially related to the prior representation." 716 S.E.2d 920, 928 (S.C. 2011).

The record evidence demonstrates White & Case jointly represented Sims and Muriel for estate planning purposes. White & Case testified "there was . . . an estate plan, developed jointly by [Sims and Muriel] utilizing the services of [White & Case] . . . – from 1990 to 2004—to

establish a tax efficient plan for dealing with [Sims'] estate and in particular [Sims'] IRA." (Dkt. No. 78-7 at 28). Defendants present the testimony of their expert, W. Steven Johnson, *Esq.*, a trusts and estates attorney. (Dkt. No. 81-7). Mr. Johnson testified that "the nature of joint representation, validates that there was no duty of loyalty or confidentiality imposed upon White & Case as between co-clients; therefore, there would be no reason to prevent Mr. Kavoukjian from filing a creditor's claim against Muriel's estate in view of the fact that Mr. Kavoukjian reasonably believed that Muriel breached her trust to Sims in her actions taken after Sims' death as to the distribution from an IRA previously owned by Sims and for which Muriel was the named beneficiary." (Dkt. No. 81-6 at 7). White & Case testified that Mr. Kavoukjian believed he had to act with respect to the actions taken by the Estate that were inequitable to the Farr Children such as the "overvaluation of the residence that resulted in greater amount of estate taxes being imposed on the Estate and attempting to make all of the estate taxes payable out of the IRA that was to go to the Farr Children." (Dkt. No. 78-7 at 25).

In addition, Plaintiffs' response to Defendants' Interrogatory 7 states that Defendants breached a duty of loyalty owed to Muriel by pursuing claims against the Estate without obtaining Muriel's informed consent. (Dkt. No. 81-1 at 5). On summary judgment, the Court determined there are issues of material fact as to whether White & Case obtained Muriel's waiver of privileges, duty of confidentiality, duty of loyalty and conflict of interest. It is premature to determine whether Defendants breached a duty of loyalty to Muriel when there is also an issue of material fact as to whether Defendants obtained Muriel's consent to waive conflicts of interest and any duty of loyalty.

Upon a careful review of the record, the Court finds there are issues of material fact as to whether Defendants' breached a duty of loyalty owed to Muriel by filing a Statement of Creditor's

Claim against the Estate.  The parties' cross motions for summary judgment as to whether Defendants breached a duty of loyalty to Muriel are denied.

> v.  Whether Defendants' Conduct Proximately Caused Plaintiffs' Damages

Plaintiffs move for summary judgment on the ground that "but for" Defendants' filing of the Statement of Creditor's claim on March 29, 2016, Plaintiffs would not have incurred liability from the settlement of the Underlying Lawsuit ($600,000.00) or incurred liability for the payment of attorney's fees in the Underlying Lawsuit ($550, 000.00).  (Dkt. Nos. 88 at 26; 78 at 26). Defendants move for summary judgment on this issue.  (Dkt. No. 79-1 at 40). Defendants argue the filing of the Statement of Creditor's Claim did not proximately cause any damage to Muriel's Estate because the Underlying Lawsuit would have occurred regardless.  (Dkt. Nos. 81 at 38-43; 90 at 26-27).

In order to prevail on a legal malpractice claim, a plaintiff must prove: (1) the existence of an attorney-client relationship; (2) a breach of duty by the attorney; (3) damage to the client; and (4) the damage was proximately caused by the breach of duty.  *Eadie v. Krause*, 671 S.E.2d 389, 393 (S.C. Ct. App. 2008).  Proximate cause requires proof of causation and legal cause.  *Sims v. Hall*, 592 S.E.2d 315, 319 (S.C. Ct. App. 2003).  Causation in fact is proven by establishing the "Plaintiff's injury would not have occurred but for the Defendant's breach." *Id.*  Legal cause is proven by establishing foreseeability.  *Id.*  When the injury complained of is not reasonably foreseeable, in the exercise of due care, there is no liability.  *Eadie v. Krause*, 671 S.E.2d 389, 394 (S.C. 2008).  Proximate cause does not mean the sole cause.  *Sims,* 592 S.E.2d at 320. The Defendant's conduct can be a proximate cause if it was at least one of the direct, concurring causes of the injury.  *Sims,* 592 S.E.2d at 320. In a legal malpractice action, the Plaintiff bears the burden of proving the alleged malpractice proximately caused damage to the Plaintiff and the Defendant

may be held liable for anything which appears to have been a natural and probable consequence of his negligence. *Eadie*, 671 S.E.2d at 394 (citing *Sims*, 592 S.E.2d at 320). The determination of proximate cause is often a question for the jury, but the Court may decide proximate cause as a matter of law when the evidence is susceptible to only one inference." *Tuten v. Joel*, 763 S.E.2d 54, 61 (S.C. Ct. App. 2014).

In order to establish a breach of fiduciary duty claim, a Plaintiff must show: (1) the existence of a fiduciary relationship; (2) a breach of that duty; and (3) damages proximately resulting from the wrongful conduct of the Defendant." *Wellin v. Wellin*, No. 2:13-CV-1831-DCN, 2014 WL 234216, at * 5 (D.S.C. Jan. 22, 2014) (citing *Turpin v. Lowther*, 745 S.E.2d 397, 401 (S.C. Ct. App. 2013).

In this case, it is undisputed that Mr. Kavoukjian filed the Statement of Creditor's claim on March 29, 2016, which was the last day to file a Statement of Creditor's Claim against the Estate pursuant to § 62-3-803. (Dkt. Nos. 78-7 at 50; 79-14 at 77). South Carolina Probate Code § 62-3-803 requires that a Statement of Creditor's Claim be filed within eight months following the first publication of an estate's notice to creditors to preserve a creditor's ability to file a formal lawsuit on claims arising prior to death. S.C. Code Ann. §§ 62-3-803 and 804 (1986). Section 62-3-803 states that it applies to all claims "whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract, tort, or other legal basis." *Id*. 803(c). In addition, § 62-3-803(d) includes several enumerated exceptions to the time limit imposed in § 62-3-803(d).[8]

---

[8] S.C. Code Ann. § 62-3-803(d) includes exceptions to the deadline included § 803 to include a (1) commencing a proceeding to enforce a mortgage, pledge, lien, or other security interest upon property of the estate; (2) to the limits of the insurance protection only, commencing a proceeding to establish liability of the decedent or the personal representative for which he is protected by liability or insurance; or (3) collecting compensation for services rendered to the estate or reimbursement for expenses advanced by the personal representative or by the attorney or accountant for the personal representative of the estate.

Section 62-3-803 is a non-claim statute. *In re Estate of Hover*, 754 S.E.2d 875, 880 (S.C. 2014) (citing *In re Estate of Tollison*, 463 S.E. 2d 611, 613 (S.C. Ct. App. 1995). A non-claim statute is distinct from the statute of limitations and is a "a self-contained statute which absolutely prohibits the initiation of litigation based on it after a prescribed period." *Id.* Equitable considerations are not a factor in a claims-barring analysis. *In re Estate of Hover*, 754 S.E.2d at 884. While equitable considerations may extend the time for commencing an action under the statute of limitation, non-claim statutes impose a condition precedent to the enforcement of a right of action and are not subject to equitable exceptions. *Phillips v. Quick*, 731 S.E.2d 327, 329 (S.C. Ct. App. 2012)). Thus, if a creditor fails to timely present a claim in compliance with § 62-3-803, the creditor's right of action against the Estate is barred. *In re Estate of Hover*, 754 S.E.2d at 881. (internal citations omitted).

The record reflects that Defendants have raised several affirmative defenses in their Answer to the Complaint, such as waiver, laches, estoppel, unclean hands, and comparative negligence. (Dkt. No. 7 at ¶¶ 34, 39). Upon a careful consideration of the parties' arguments on proximate cause and a review of the record, the Court finds there are issues of material fact as to whether Mr. Kavoukjian's filing of the Statement of Creditor's Claim on March 29, 2016 proximately caused Plaintiffs' injuries and whether the Defendants' affirmative defenses defeat, in whole or in part, the Plaintiffs' claims. The parties' cross motions for summary judgment as to proximate cause are denied.

      vi.   <u>Whether Collateral Estoppel Bars Litigation Surrounding Defendants'<br>Alleged Breach of Duty, Rules of Professional Conduct 1.6 and 1.9</u>

Defendants argue collateral estoppel bars Plaintiffs' claims that Defendants breached RPC 1.6 and 1.9, which govern confidentiality of client information and duties to former clients. (Dkt. No. 79-1 at 44-50). Under South Carolina law, a party asserting collateral estoppel must show that

the issue of fact or law in the present lawsuit was: (1) actually litigated in the prior action; (2) directly determined in the prior action; and (3) necessary to support the prior judgment. *Carolina Renewal, Inc. v. South Carolina Dep't of Transp.*, 684 S.E.2d 779, 782 (2009).

Collateral estoppel first requires that the issue sought to be precluded is the same as the one previously litigated. Defendants seek to preclude Plaintiffs from litigating whether Defendants breached RPC 1.6 and 1.9. Defendants argue this issue was determined in the Underlying Lawsuit when the Probate Court entered a "Consent Order Denying Motion to Quash Subpoena" premised on the same issue. (Dkt. No. 79-1 at 45). In the Underlying Lawsuit, The Farr Children subpoenaed White & Case for documents and information related to Muriel and Sims' estate planning. (Dkt. No. 80-25). The Estate filed a motion to quash the subpoena on the ground certain communications were protected by attorney-client privilege and should not be disclosed without a Court Order. (Dkt. No. 80-26). The Probate Court entered a Consent Order Denying Motion to Quash "with the consent of counsel for the parties" and directed that White & Case comply with the subpoena. (Dkt. No. 80-27). The Probate Court explained, "the issue is whether or not the attorney-client privilege applies to bar the production of these documents and whether or not communications to and from Sims and his estate planning lawyers  and to and from Muriel and her estate planning lawyers is protected by said privilege. (Dkt. No. 80-27 at 3). The Probate Court found that communications between Muriel and Sims and White & Case during the joint representation were not privileged because such communications concerned an estate plan. (*Id.* at 3-4). The Probate Court found that White & Case lawyers involved in the joint representation were not precluded from testifying about the communications between Sims and Muriel within the context of the case. (*Id.*).

In this case, the issue before the Court is whether Defendants breached the duties of confidentiality and loyalty to Muriel as a former client by filing a Statement of Creditor Claim on behalf of the Farr Children against the Estate. The issue determined by the Probate Court in its Order Denying the Estate's Motion to Quash was essentially whether attorney-client privilege precluded White & Case and Mr. Kavoukjian from complying with a subpoena seeking information related to the joint representation of Sims and Muriel. The two issues are not the same. Thus, Defendants' motion for summary judgment on the ground collateral estoppel bars Plaintiffs' claims is denied.

       vii.  <u>Whether Plaintiffs Waived Breach of Duty Claims in Underlying Lawsuit</u>

Defendants argue Plaintiffs expressly waived claims Defendants violated the duties of loyalty and confidentiality owed to Muriel. Defendants argue that in the Underlying Lawsuit, Plaintiffs consented to the Probate Court Order denying Plaintiffs' own motion to quash. (Dkt. No. 80-27). Defendants argue Plaintiffs voluntarily produced 13,000 pages of documents and communications prepared by Defendants without any objection the documents contained privileged information. (Dkt. No. 80-24; Dkt. No. 81-12). Plaintiffs argue they consented to the Probate Court Order and produced documents without objection as "necessary to defend the Farr Children's claims." (Dkt. No. 88 at 37).

Waiver is a voluntary and intentional abandonment or relinquishment of a known right. *Parker v. Parker*, 443 S.E.2d 388, 391 (1994). It may be expressed or implied by a party's conduct . . . *Id*. (citing *Mende v. Conway Hospital, Inc*. 404 S.E.2d 33 (1991). Upon a review of the record, the Court finds there are issues of material fact as to whether Plaintiffs waived their claims in this suit based on their actions in the Underlying Litigation. The issue before the Probate Court was whether the attorney-client privilege attached to communications between Sims and Muriel as

jointly represented clients of White & Case related to estate planning matters. The Plaintiffs' consented to White & Case's production of these documents to defend the Farr Children's' claims against the Estate, and the Court finds that this does not amount to an explicit or implicit waiver of Plaintiffs' rights to bring the instant case arising out of Defendants' filing of the Statement of Creditor's Claim against the Estate.   Further, wavier is question of fact for the finder of fact." *Parker v. Parker*, 443 S.E.2d 388, 391 (1994) (quoting *Janasik v. Fairway Oaks Villas Horizontal Property Regime*, 415 S.E.2d 384 (1992).  Defendants' motion for summary judgment is denied on the ground Plaintiffs' expressly waived breach of duty of loyalty claims against Defendants in the Underlying Lawsuit.

viii.   Whether Plaintiffs' Breach of Fiduciary Duty Claim is Duplicative of Plaintiffs' Professional Negligence Claim

Defendants move for summary judgment on the ground Plaintiffs' claims for breach of fiduciary duties and professional negligence are duplicative claims such that the breach of fiduciary duty claim should be dismissed.  (Dkt. No.79-1 at 28).  The South Carolina Supreme Court held that a breach of fiduciary duty claim is duplicative of a legal malpractice claim where the claim for breach of fiduciary duty "arose out of the duty inherent in the attorney-client relationship and it arose out of the same factual allegations."  *RFT Mgmt*. Co. v. *Tinsley & Adams L.L.P.*, 732 S.E.2d 166, 173 (S.C. 2012); *see also Vieira v. Simpson*, No. 2:13-CV-2610-DCN, 2015 WL 1299959, at *3 (D.S.C. Mar. 23, 2015) (holding breach of fiduciary duty and negligence claims were based entirely on the attorney-client relationship and no pleading demonstrated the claims arose out of a duty other than the one created by the attorney-client relationship).

In response, Plaintiffs argue alternative pleading based on the same set of facts should be permitted when "there is evidence and testimony in the record supporting both Plaintiffs' claims for breach of fiduciary duty and professional legal professional negligence. (Dkt. No. 88 at 13-14).

A plaintiff may join as alternate claims as many claims, legal or equitable, that are available against the opposing party, even if the claims are inconsistent or duplicative. *See Feminist Majority Found. v. Hurley*, 911 F.3d 674, 696 (4th Cir. 2018) (it is appropriate to plead multiple or alternative claims based on the same set of facts); Fed. R. Civ. P. 8(d)(2) ("A party may set out two or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense in separate ones.").

Plaintiffs' remaining claims relate solely to whether Defendants' filing of the Statement of Creditor Claim on March 29, 2016 amounted to a breach of duty of loyalty. As the breach of fiduciary duty and professional negligence claims arise out of the same set of facts, out of the same attorney-client relationship, and allege the same duties owed, the Court finds the claims present duplicative questions in both law and equity. Defendants' motion for summary judgment is granted as to Plaintiffs' duplicative claims for breach of fiduciary duty and professional negligence, and Plaintiffs are instructed to elect a remedy.

ix. <u>Whether Expert Testimony is Required to Support Plaintiffs' Professional Negligence Claim</u>

Defendants argue Plaintiffs fail to establish through expert testimony the standard of care in a professional negligence action and therefore, Plaintiffs' claim must fail. (Dkt. No. 79-1 at 43).

The South Carolina Supreme Court explained that "[w]ith respect to a legal malpractice claim, a claimant must rely on expert testimony "to establish both the standard of care and the deviation by the defendant from such standard." *Holmes v. Haynsworth, Sinkler & Boyd, P.A.*, 760 S.E.2d 399, 407 (S.C. 2014) (citing *Gilliland v. Elmwood Props.*, 391 S.E.2d 577, 580 (S.C. 1990); *Smith v. Haynsworth, Marion, McKay & Geurard*, 472 S.E.2d 612, 613 (S.C. 1996); *Hall v. Feador*, 561 S.E.3d 654, 657 (S.C. Ct. App. 2002). "In this regard, a claimant must establish, through expert testimony, the following: (1) the existence of an attorney-client relationship; (2) a

breach of duty by the attorney; damage to the client; and (4) proximate cause of the plaintiff's damages by the breach. *Holmes*, 760 S.E.2d at 407 (citing *Hall*, 561 S.E.3d at 656); *see also Harris Teeter, Inc. v. Moore & Van Allen, PLLC*, 701 S.E.2d 742, 745 (S.C. 2010). Furthermore, as to damages, a claimant must show that he or she "most probably would have been successful in the underlying suit if the attorney had not committed the alleged malpractice." *Holmes*, 760 S.E.2d at 407 (citing *Doe v. Howe*, 626 S.E.2d 25, 30 (S.C. Ct. App. 2005) (quoting *Summer v. Carpenter*, 492 S.E.2d 55, 58 (S.C. 1997)). "The question of the success of the underlying claim, if suit had been brought, is a question of law." *Holmes*, 760 S.E.2d at 407.

In this case, Plaintiffs produced a Rule 26(A)(2)(B) expert report in the form of a Declaration prepared by Mr. Gregory B. Adams. (Dkt. No. 27). Mr. Adams is a Professor Emeritus at the University of South Carolina School of Law. (*Id.* at 15). In his Declaration, Mr. Adams states, "the standard of care required [Mr.] Kavoukjian to render services with the degree of skill, care, knowledge, and judgment usually possessed and exercised by members of the profession." (Dkt. No. 27 at 11) (citing *Harris Teeter v. Moore & Van Allen*, 701 S.E.2d 742, 745 (S.C. 2010). Mr. Adams' Declaration contains numerous statements as to how Defendants breached professional and fiduciary duties owed to Muriel arising out of the joint representation of Muriel and Sims. *See e.g.*, (Dkt. No. 27 at 8-9) (stating Mr. Kavoukjian violated his duties of confidentiality and loyalty owed to Muriel by undertaking representation of the Farr Children and acting on their behalf to attack Muriel's Estate, thus taking a legal position against a former client); (Dkt. No. 27 at 11-12) (stating White & Case violated duties to Muriel by employing Mr. Kavoukjian as an estate planning lawyer and permitting him to represent the Farr Children in a claim against the Estate.). Mr. Adams states "it is my expert opinion that . . . there would have

been no estate litigation between [the Farr Children] and [the Estate] had [Defendants'] not breached these duties." (*Id.* at 12).

Upon a careful review of the record and viewing the evidence in a light most favorable to Plaintiffs, the Court finds Plaintiffs have sufficiently provided expert opinion to supply the standard of care in a professional negligence case. Defendants' motion for summary judgment is denied on the on the ground Plaintiffs fail to adequately support the standard of care through expert testimony.

> x.  <u>Whether the Evidence Establishes White & Case is Directly Liable to Plaintiffs for Professional Negligence</u>

Defendants move for summary judgment on Plaintiffs' claim for direct liability against White & Case for professional negligence. (Dkt. No. 79-1 at 50-51). Defendants argue Plaintiffs' expert Mr. Adams, has admitted that no direct actions by White & Case proximately caused any damages to Plaintiffs, and thus Plaintiffs claims against White & Case fail as a matter of law. (Dkt. No. 80-15 at 11).

In this lawsuit, Plaintiffs contend Defendants breached the duties of loyalty and confidentiality by pursuing claims against the Estate on behalf of the Farr Children; by using information obtained during the representation of Muriel and Sims to file the Statement of Creditor's Claim; by representing Muriel and other clients (John Farr and his wife Olivia) when the representation involved a concurrent conflict of interest). (Dkt. No. 81-1 at 3-8).

In his Declaration, Mr. Adams states, "it is my expert opinion [White & Case] violated its duties to [Muriel] by employing [Mr.] Kavoukjian as a lawyer practicing within the firm" by (i) representing Muriel as her estate planning lawyer; (ii) allowing him to breach his duties by filing a claim against Muriel's Estate and assisting against her Estate in the Underlying Lawsuit; (iii) disclosing confidential information from his representation of Muriel to the financial detriment of

her Estate; and (iv) representing the Farr Children against the Estate. (Dkt. No. 27 at 11-12). Mr. Adams continues "it is my expert opinion that these violations of duty by Defendants caused substantial damage to . . . [Muriel] and her estate. . . The jury could reasonably find that there would have been no estate litigation . . . had [Defendants] not breached these duties." (*Id.* at 12). Mr. Adams testified Defendants owed Muriel professional and fiduciary duties, breached those duties, and failed to meet the standard of care. (Dkt. No. 88-2). Mr. Adams testified Defendants' violation of their duties caused proximate harm to the Estate when Mr. Kavoukjian represented the Farr Children in pursuing the Underlying Lawsuit against the Estate. (*Id*).

On the other hand, Mr. Adams testified as to what he believes White & Case did inappropriately in this case. (Dkt. No. 80-15 at 9). Mr. Adams testified White & Case violated fiduciary duties by terminating representation of Sims and Muriel; that the simultaneous representation of John and Olivia Farr along with Muriel and Sims became a concurrent conflict of interest; and that White & Case failed to maintain essential records  such as those actions purportedly taken to gain Muriel's informed consent. (*Id.* at 10). Mr. Adams continued "[t]here are several things that I believe White & Case did that violated the standard of care or their fiduciary duties. Those are not the things that led to the harm and the damages being sought in this litigation." (*Id.*). When asked to clarify, Mr. Adams stated, "[a]t this time, I'm not aware of anything that [White & Case did] that would have proximately harmed the estate." (*Id.* at 11).

Upon a careful review of the record and viewing the evidence in a light most favorable to Plaintiffs, the Court finds there are issues of material fact as to whether White & Case is directly liable to Plaintiffs for professional legal malpractice. Mr. Adams has provided an expert opinion that White & Case is liable to the Estate for allowing Mr. Kavoukjian to represent the Farr Children and file a Statement of Creditor's Claim that resulted in financial damage to the Estate. (Dkt. No.

27 at 11-12).  Mr. Adams has also testified that White & Case has breached fiduciary duties owed to Muriel and acted inappropriately, none of which are the proximate cause of harm to the Estate. (Dkt. No. 80-15 at 9).  At trial, Defendants will have the opportunity to cross-examine Mr. Adams regarding his Declaration and testimony as to whether White & Case's conduct proximately caused damage to the Estate.  As such, Defendants' motion for summary judgment is denied on the ground Plaintiffs failed to present evidence of Defendants' direct liability.

### B.  Plaintiffs' Motion to Strike (Dkt. No. 89)

Plaintiffs move to strike the deposition testimony and expert testimony offered by Defendants in support of Defendants' motion for summary judgment.  (Dkt. No. 89).  Plaintiffs move to strike various excerpts from: (1) Mr. Kavoukjian's 2017 deposition; (2) White & Case's 30(b)(6) deposition testimony; (3) Mr. Kavoukjian's 2020 deposition testimony; and (4) expert report of W. Steven Johnson, *Esq.* that discuss or rely on Sims and Muriel's purported waiver of all privileges and duties of confidentiality and loyalty on the ground the evidence is inadmissible hearsay and or is otherwise excludable by the South Carolina Dead Man's Statue S.C. Code Ann. § 19-11-20.[9]  Plaintiffs also move to strike the Affidavit of Thomas H. Pope, *Esq.* on the grounds

---

[9]  Specifically, Plaintiffs move to strike the following categories of information:

1. White & Case's conflict of interests regarding concurrent representation of John Farr and Olivia Farr during their representation of Sims and Muriel;

2. White & Case's conflict of interest concerning their subsequent representation of John Farr and the other Farr children concerning claims adverse to Muriel's estate after White & Case terminated their lawyer-client relationship with Sims and Muriel;

3. White & Case's duties of loyalty to Muriel during White & Case's common representation of Muriel and Sims;

4. White & Case's duties of loyalty to Muriel after White & Case terminated their common representation of Muriel and Sims; and

5. White & Case's duties of confidentiality regarding third parties, including the Farr children, at various points during and after White & Case's common representation of Muriel and Sims.

the Affidavit is not based on personal knowledge, is based on speculation, and discusses matters of law.  (Dkt. No. 89 at 9).

As a preliminary matter, the Court will discuss Plaintiffs' motion as to White & Case's 30(b)(6) deposition testimony. (Dkt. No. 89 at 3-4).  Plaintiffs' motion does not state which parts of the 30(b)(6) deposition testimony the Court should strike, but generally cites to White & Case's 30(b)(6) deposition at ECF No. 79-7.  (*Id.* at 4).  On reply, Plaintiffs indicate they inadvertently omitted the page line and citations to White & Case's 30(b)(6) testimony they move to strike. (Dkt. No. 102 at 3).  Plaintiffs' reply cites to several deposition page and line numbers with no citation to an ECF No.  (*Id.*).  Upon a review of Plaintiffs' motion and reply, the Court notes that the page and line numbers cited by Plaintiffs on reply do not align with or are not contained within the White & Case 30(b)(6) deposition found at ECF No. 79-7.  (*Compare* Dkt. No. 79-7, *with* Dkt. No. 102 (deposition pincites)).  The District of South Carolina Local Rule 7.05(A)(2) requires that a memorandum contain reference to the location in the record.  *See* DSC Local Rule 7.05(A)(2). Plaintiffs have not included clear citations to the record as to which excerpts of White & Case's 30(b)(6) testimony they move to strike from the record, thus the Court denies Plaintiffs' motion to strike as to White & Case's 30(b)(6) testimony.

Plaintiffs also move to strike excerpts from (i) Mr. Kavoukjian's 2017 and 2020 depositions; and (ii) Mr. Johnson's expert report as inadmissible pursuant to the South Carolina Dead Man's statute.

The South Carolina Dead Man's Statute, provides in pertinent part:

"[N]o person who has a legal or equitable interest which may be affected by the action shall be examined in regard to any transaction or communication between such witness and a person (now) deceased, . . . as a witness against a party prosecuting or defending the action as executor, administrator, heir-at-law, next of kin, assignee, legatee, devisee or survivor of such deceased person when such examination or any judgment in such action can affect the interest of such witness . . ."

S.C. Code Ann. § 19-11-20 (1985).

The South Carolina Dead Man's Statute essentially prohibits any interested person from testifying concerning conversations or transactions with the decedent if the testimony could affect his or her interest. *Hanahan v. Simpson*, 458 S.E.2d 903, 909 (1997) (internal citations omitted). The rule is founded on the principle that it is against public policy to allow a witness thus interested to testify as to such matters when such testimony, if untrue, cannot be contradicted. *Id.* (internal citations omitted). "Because this statute is an exception to the general rule of witness competency, it requires a restrictive reading, which the party requesting its muzzling effect bears the burden on." *Id.* (internal citations omitted).

South Carolina courts have construed the Dead Man's statute as requiring the witness to (1) be a party to the action or (2) have a present or past legal or equitable interest at the time the testimony is given that may be affected by the direct legal operation and effect of the judgment in the action in which the witness is testifying. S.C. Code Ann. § 19-11-20; *McLaughlin v. Gressette*, 79 S.E.2d 149, 159 (1953); *Sanders v. Bagwell,* 15 S.E. 714 (1982) (the interest of a witness should be certain and vested, not uncertain and contingent); *U.S. Fire Ins. Co. v. Macloskie*, 465 S.E.2d 759, 761 (Ct. App. 1995); Riddle v. George, 187 S.E. 524, 526 (S.C. 1936).

The South Carolina Supreme Court has recognized several exceptions to the Dead Man's Statute. The exceptions include (1) testimony where the party asserting the statute "opens the door" by offering testimony otherwise excludible; (2) testimony by the attorney who prepared the will on the ground that the attorney is not an interested person; (3) testimony where the witness's present or previous interest (*i.e.*, a vested legal or equitable interest) will not be affected by the event of trial; (4) witness testimony that is against his or her interest; (5) testimony about a transaction between the deceased and a third party; (6) documentary evidence relating to the

transaction or communication with the deceased person; and (7) testimony about the acts, demeanor, or conduct of the decedent where the testimony is offered merely for its bearing on an issue of mental competency. *Hanahan*, 485 S.E.2d at 909-910.

First, as to Mr. Kavoukjian's 2017 deposition testimony, the Court finds the Dead Man's Statute would not apply. In the Underlying Litigation, Mr. Kavoukjian testified as the former estate counsel to Sims and Muriel. He was not a party to the action and did not have a vested legal or equitable interest that would have been affected by the direct, legal operation of the judgment that would enforce the application of the Dead Man's Statute to his testimony. *S. Fire Ins. Co. v. Macloskie*, 465 S.E.2d 759, 761 (Ct. App. 1995). Plaintiffs' motion to strike is denied as to Mr. Kavoukjian's 2017 deposition testimony as it may not be excluded pursuant to the South Carolina Dead Man's Statute.

Second, as to Mr. Kavoukjian's 2020 deposition testimony, the Court finds an exception to the South Carolina Dead Man's Statute would apply. Defendants' Interrogatory 7 asks Plaintiffs to state each action by Defendants that Plaintiffs contend breached the duty of confidentiality, duty of loyalty, and/or legal professional negligence. (Dkt. No. 81-1 at 3). In response, Plaintiffs state that Defendants breached duties of confidentiality and loyalty by pursuing claims against Muriel's estate without obtaining her informed consent in writing and by disclosing information related to Defendants' representation of Muriel without obtaining her informed consent, confirmed in writing. (Dkt. No.81-1 at 5-6). On summary judgment, Defendants argue that Sims and Muriel waived all privileges and duties of confidentiality and loyalty with respect to the joint representation. (Dkt. No. 79-1). Defendants argue the applicable RPC at the time the waiver would have occurred did not require informed consent confirmed in writing to the at-issue waivers. (*Id.* at 37, FN 38; Dkt. No. 80-15 at 21-22).

As to the waiver issue on summary judgment, the Court determined there are issues of material fact as to whether Muriel waived privileges and rights based on letters written by Sims and Mr. Kavoukjian that purport to establish a waiver, in addition to the testimony of Mr. Kavoukjian as to a phone conversation with Sims where Sims and Muriel purportedly waived privileges. *See* (Dkt. No. 79-4 at 2; 81-8; 79-5; 79-3 at 5-6; 79-8 at 19-20).   To the extent Mr. Kavoukjian's 2020 testimony as to Sims and Muriel's waiver may have been objectionable under the Dead Man's statute, it would be cumulative to the letters written by Sims and Mr. Kavoukjian that also purport to establish Sims and Muriel's waiver.  As such, Plaintiffs' motion to strike is denied as to Mr. Kavoukjian's 2020 deposition testimony as it may not be excluded pursuant to the South Carolina Dead Man's Statute.

Third, Plaintiffs move to strike excerpts of Mr. Johnson's expert report as inadmissible evidence pursuant to the South Carolina Dead Man's Statute.  (Dkt. No. 89 at 4). Mr. Johnson's expert report is not subject to the Dead Man's Statute because Mr. Johnson is merely an expert in this case.  He is not a party to the action, nor does he have a present or past legal or equitable interest that may be affected by the direct legal operation and effect of the judgment in the action. Plaintiffs' motion to strike is denied as to Mr. Johnson's expert report as it may not be excluded pursuant to the South Carolina Dead Man's Statute.

Plaintiffs also move to strike as inadmissible hearsay: (i) Mr. Kavoukjian's deposition testimony; and (ii) excerpts of Mr. Johnson's expert report.

At the summary judgment stage, a "party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible evidence."  Fed. R. Civ. P. 56(c)(3).  The Fourth Circuit has found that hearsay evidence which is inadmissible at trial, cannot

be considered on a motion for summary judgment. *Maryland Highways Contractors Ass'n, Inc. v. State of Md.*, 933 F.2d 1246, 1251-52 (4th Cir. 1991).

First, Plaintiffs argue Mr. Kavoukjian's deposition testimony discussing Sims and Muriel's purported oral waivers is hearsay that is inadmissible pursuant to Federal Rules of Evidence 801(c) (stating the rule prohibiting inadmissible hearsay) and 802 (providing that hearsay is not admissible unless it fits within a prescribed exception). Defendants argue that several exceptions to the hearsay rule would make this testimony admissible. The Court need not delve into a detailed analysis of each argument presented by Defendants as the Court is persuaded by the argument that the testimony discussing Sims and Muriel's waiver of all privileges, conflict of interest, and duties of loyalty and confidentiality would be admissible as a statement against interest pursuant to Federal Rule of Evidence Rule 804(b)(3) (stating that a reasonable person in the declarant's position would have made [the statement] only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest . . . and is supported by corroborating circumstances that clearly indicate its trustworthiness.). Plaintiffs' motion to strike is denied on the ground Mr. Kavoukjian's deposition testimony is inadmissible hearsay.

Second, as to Mr. Johnson's expert report, Plaintiffs move to strike several paragraphs of the report "to the extent Mr. Johnson's opinions rely on or restate communications between Sims and Muriel that purport to establish Muriel's informed consent to waive conflicts of interest, duties of loyalty and confidentiality." (Dkt. No. 89 at 9). Mr. Johnson's report contains the opinion Defendants obtained an "informed waiver of conflicts of interests (actual and potential) and duties of confidentiality and loyalty pertaining to such joint representation." (Dkt. No. 81-7 at 3, ¶ (i). To reach this conclusion, Mr. Johnson states that he considered "all pleadings and pertinent discovery in the [instant matter] as well as in the Underlying Case. (Dkt. No. 81-7 fn 11, p. 10).

Pursuant to Federal Rule of Evidence 703, an expert "may base an opinion on facts or data in the case that the expert has been made aware of or personally observed.  If experts in the field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted." *United States v. Palacious,* 677 F.3d 234, 242 (4th Cir. 2012). Fed. R. Evid. 703.  In this case, it would not be unreasonable for a South Carolina Trusts and Estates Attorney to consider the deposition testimony of Mr. Kavoukjian as counsel that jointly represented Sims and Muriel for estate planning purposes, as one of multiple pieces of data utilized to form an opinion as to whether Defendants breached duties of loyalty and confidentiality to a former client pertaining to the representation. Thus, the Court finds Mr. Johnson's expert report properly considered the evidence cited in the report.  Plaintiffs' motion to strike as Mr. Johnson's expert report as inadmissible hearsay, is denied.

Last, Plaintiffs move to strike the Affidavit of Thomas H. Pope, *Esq*.  (Dkt. No. 89 at 9-14).  Plaintiffs argue the Affidavit is inadmissible because it instructs the Court on how a court would have ruled on South Carolina's non-claim statute S.C. Code Ann. § 62-3-803 in contravention of the rule that matters of law are exclusively within the province of the Court.  (Dkt. No. 89 at 11).  Plaintiffs argue Mr. Pope's Affidavit is not grounded in fact or his personal knowledge but is based on "incompetent speculation" because Mr. Pope surmises what his clients would have done if White & Case did not file the Statement of Creditor's Claim.  (Dkt. No. 89 at 13).  On summary judgment, the Court made a finding that the South Carolina probate code § 62-3-803 has an eight-month deadline to file claims against the Estate.  Thus, it is irrelevant whether the Farr Children intended to file claims against the Estate after the eight-month period because those claims would have been barred.  Plaintiffs' motion to strike Mr. Pope's Affidavit is granted.

## IV.  <u>Conclusion</u>

For the reasons stated above, Plaintiffs' motion for summary judgment is **DENIED**.  (Dkt. No. 78).

Defendants' motion for summary judgment is **GRANTED IN PART**, **DENIED IN PART**. (Dkt. No. 79).  Defendants' motion for summary judgment is **GRANTED** as to:

(i)    the statute of limitations barring Plaintiffs' claims prior to March 27, 2016, leaving remaining claims confined to the issue of whether Defendants' filing of the Statement of Creditor's Claim on March 29, 2016 amounted to a breach of duty;

(ii)    no breach of alleged right of confidentiality Defendants owed Muriel;

(iii)    Plaintiffs' duplicative claims for breach of fiduciary duty and professional negligence where Plaintiffs are instructed to elect a remedy.

Defendants' motion for summary judgment is denied as to:

(i)    whether Muriel waived privilege, duty of loyalty and confidentiality, and conflict of interest;

(ii)    whether Mr. Kavoukjian's filing of the Statement of Creditor's Claim breached duty of loyalty to Muriel;

(iii)    whether Defendants' proximately caused Plaintiffs' injuries;

(iv)    whether collateral estoppel bars Plaintiffs' claims;

(v)    whether Plaintiffs waived breach of duty claims in Underlying Litigation;

(vi)    whether Plaintiffs' expert Mr. Adams states the standard of care owed in a professional negligence case;

(vii)    whether Plaintiffs present evidence of White & Case's direct liability for professional negligence.

Plaintiffs' motion to strike is **GRANTED IN PART, DENIED IN PART**.  (Dkt. No. 89).

Plaintiffs' motion to strike is **GRANTED** as to:

(i)      Mr. Pope's Affidavit.

Plaintiffs' motion to strike is **DENIED** as to:

(i)      White & Case's 30(b)(6) testimony;

(ii)     excluding Mr. Kavoukjian's 2017 and 2020 deposition testimony pursuant to the South Carolina Dead Man's Statute;

(iii)    excluding Mr. Kavoukjian's testimony as inadmissible hearsay;

(iv)    excluding Mr. Johnson's expert report pursuant to the South Carolina Dead Man's Statute;

(v)     excluding Mr. Johnson's expert report as inadmissible hearsay.


**AND IT IS SO ORDERED**.


                                        s/ Richard M. Gergel
                                        Richard M. Gergel
                                        United States District Judge


July 27, 2021
Charleston, South Carolina