# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| Katherine St. John Haney and James Byrnes, as Personal Representatives of the Estate of Muriel T. Farr ) ) ) ) Plaintiffs, ) ) v. ) ) Michael E. Kavoukjian, Esq., ) and White & Case, LLP ) ) Defendants. ) | Civil Action No. 2:19-cv-2098-RMG<br><br>**ORDER AND OPINION** |

Before the Court is Defendants' motion to exclude the testimony and opinions of Plaintiffs' expert W. Ellison Thomas. (Dkt. No. 82). For the reasons stated below, the Court denies Defendants' motion.

## I.   Background

This is a breach of fiduciary duty and professional negligence action. Plaintiffs are the Personal Representatives of the Estate of Muriel T. Farr ("the Estate"). Muriel T. Farr ("Muriel") and Sims C. Farr ("Sims") were jointly represented by Defendants for estate planning purposes. Plaintiffs allege Defendants breached ethical and professional duties owed to Muriel when Defendants filed a Statement of Creditor's Claim against the Estate. (Dkt. No. 1). Plaintiffs allege that because Defendants filed the Statement of Creditor's Claim against the Estate, Sims' children initiated a probate action ("Underlying Lawsuit") against the Estate, which resulted in the Estate paying $600,000.00 dollars to Sims' children. Plaintiffs claim they also paid $563,481.35 in legal fees and litigation expenses for a total expense of $1,163,481.35. (Dkt. No. 82-2 at 2-3).

Plaintiffs brought this case against Defendants following their settlement in the Underlying Lawsuit. (Dkt. No. 1). In this case, Plaintiffs claim damages for the legal fees and litigation

1

expenses that were purportedly incurred by the Estate in the Underlying Lawsuit. In addition, Plaintiffs claim damages for lost investment income on the money they used to pay for legal fees and litigation expenses in the Underlying Lawsuit. Plaintiffs hired W. Ellison Thomas, CPA, CVA ("Mr. Thomas"), as an expert to calculate lost investment income on disbursements from Muriel's accounts that were used to pay for legal fees and litigation expenses in the Underlying Lawsuit. (Dkt. No. 82-1 at 2). Defendants move to exclude the proffered testimony and opinions of Mr. Thomas on the basis Mr. Thomas' proffered testimony and opinions are not reliable. Plaintiffs filed a response in opposition. (Dkt. No. 87). The matter is ripe for the Court's adjudication.

**II.     Legal Standard**

It is well settled under South Carolina law that expert testimony is required where the subject is beyond the common knowledge of the jury. *Babb v. Lee County Landfill SC, LLC*, 747 S.E.2d 468, 481 (S.C. 2013). The trial court determines whether expert testimony is required, based on the particular facts of the case, including the "complexity and technical nature of the evidence to be presented . . ." *Id.*

Under F.R.E. 702, the Court acts as a gatekeeper, "to verify that expert testimony is based on sufficient facts or data." *E.E.O.C. v. Freeman*, 778 F.3d 463, 472 (4th Cir. 2015). The expert testimony must be shown to be "not only relevant, but reliable." *Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579, 589 (1993). "Because expert witnesses have the potential to be both powerful and quite misleading, it is crucial that the district court conduct a careful analysis into the reliability of the expert's proposed opinions." *United States v. Fultz*, 591 Fed. Appx. 226, 227 (4th Cir. 2015).

The trial court must ensure that (1) "the testimony is the product of reliable principles and methods," (2) the expert has reliably applied the principles and methods to the facts of the case," and (3) the "testimony is based on sufficient facts and data." F.R.E. 702(b), (c), (d). "This entails

a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid," *Daubert*, 509 U.S. at 592-93, and whether the expert has "faithfully appl[ied] the methodology to the facts." *Roche v. Lincoln Prop. Co.*, 175 Fed. Appx. 592, 602 (4th Cir. 2006). Additionally, the Court must evaluate any proposed expert testimony under the standards of F.R.E. 403 to determine whether the probative value of the evidence, if relevant, is substantially outweighed by the risk of misleading or confusing the jury.

Factors to be considered in assessing the reliability of technical or scientific evidence include "whether a theory or technique . . . can be (and has been) tested," "whether the theory or technique has been subjected to peer review and publication," the "known or potential rate of error," the "existence and maintenance of standards controlling the technique's operations," and whether the theory or technique has garnered "general acceptance." *Daubert*, 509 U.S. at 593–94. The *Daubert* factors are not exhaustive and illustrate the type of factors "that will bear on the inquiry." *United States v. Hassan*, 742 F.3d 104, 130 (4th Cir. 2014). Courts have also considered whether the "expert developed his opinions expressly for the purposes of testifying or through research conducted independent of litigation." *Wehling v. Sandoz Pharm. Corp.*, 162 F.3d 1158 at *3 (4th Cir. 1998); *Daubert v. Merrell Dow Pharm. Inc.,* 113 F.3d 1311, 1317 (9th Cir. 1995) (on remand). The proponent of the expert testimony carries the burden to establish the admissibility of the testimony by a preponderance of the evidence. *Cooper v. Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001).

### III.   Discussion

Defendants move to exclude Mr. Thomas' proffered testimony and opinion that Plaintiffs incurred $213,242.90 in lost investment income as of March 31, 2020. Defendants move to

exclude on the basis the data Mr. Thomas used to calculate his opinion is unreliable.[1] (Dkt. No. 82). In his expert report, Mr. Thomas indicates he was hired to evaluate disbursements from the Trust or Estate accounts of Muriel for the purpose of calculating Plaintiffs' lost investment income. (Dkt. No. 82-3 at 3). Mr. Thomas states he has been a Certified Public Accountant in the State of South Carolina since 1986, he has experience providing expert testimony to attorneys in complex accounting and tax matters, and he has been recognized as an expert in federal court. (*Id.* at 2). Defendants do not challenge Mr. Thomas' qualification to provide a calculation on lost investment income in this case. (Dkt. No. 82-1 at 2).

The Court will summarize the data and methodology utilized by Mr. Thomas to form his opinion on Plaintiffs' lost investment income and then address Defendants' reliability arguments. The data Mr. Thomas used to form his opinion consists of Schedules C and D that contain line-item disbursements from Muriel's accounts; the Complaint; Plaintiffs' damages memo dated January 13, 2020; Muriel's various Trust Accounts; various legal invoices; and emails. (Dkt. No. 82-3 at 5-6, 7-8); (Dkt. No. 87-2 at 21-22, 34). Plaintiffs indicate the disbursements contained in Schedules C and D were used to pay for legal fees and litigation expenses in the Underlying Lawsuit. Plaintiffs provided Mr. Thomas with Schedules C and D.

The methodology Mr. Thomas used to form his opinion consists of analyzing disbursements from Muriel's account and applying a daily interest rate to the disbursements from the date the funds were removed from the account up until March 31, 2020. First, Mr. Thomas analyzed the disbursements contained in Attachments C and D. (Dkt. No. 82-3 at 7-8.). Second, Mr. Thomas combined the information contained in Attachments C and D into a single document that purports

---

[1] The parties do not discuss the five *Daubert* factors a Court may consider when analyzing the reliability of an expert's methodology and principles. *Daubert v. Merrell Dow Pharm. Inc.,* 113 F.3d 1311, 1317 (9th Cir. 1995).

to represent the total disbursements Plaintiffs utilized to pay for legal fees and litigation expenses in the Underlying Lawsuit. ("Attachment F"). (Dkt. No. 82-3). The total disbursements amount to $1,163,481.35. (Dkt. No. 82-2 at 3).

Third, Mr. Thomas calculated Plaintiffs' lost investment income. Mr. Thomas selected a daily interest rate pursuant to various factors. Mr. Thomas testified that in some cases the interest rate is given to him and other cases the rate is agreed to. (Dkt. No. 87-2 at 44). Mr. Thomas considered that South Carolina Code Annotated § 34-31-20 contains a "Legal rate of interest" which states that in cases where sums of money are being ascertained the legal interest rate shall be 8.75%. (Dkt. No. 82-3); S.C. Code Ann. § 34-31-20. Mr. Thomas also consulted with Mr. Byrnes and Plaintiffs' counsel Thomas Pendarvis, *Esq*. Mr. Thomas analyzed the materials he was provided and looked at some of the investments and holdings Plaintiffs had growth in. Mr. Thomas considered that the market was moving upward between 2016 through 2019 but he was unable to "comfortably come in and say the market rate on this would be X, so I used 8.75%". (Dkt. No. 87-2 at 32-22, 44-45, 48). Mr. Thomas testified that "8.75 % in this case is a statutory fair and reasonable rase." (Dkt. No. 87-2 at 48). Mr. Thomas took the rate of 8.75 % and divided it by 365 to get a daily rate of .00023973. (Dkt. No. 82-3 at 5). Mr. Thomas multiplied each line-item disbursement contained in Schedules C and D by the daily rate, then multiplied that figure by the number of days the funds had been disbursed or removed from the account, up until March 31, 2020. (Dkt. No. 87-2 at 43); (Dkt. No. 82-3 at 5).[2]

---

[2] Mr. Thomas indicates that March 31, 2020 was the "Calculation Date" used in this case. The "Calculation Date" is the date used to measure the interest from the date the funds were removed from the account to the Calculation Date. (Dkt. No. 82-3 at 5). Mr. Thomas has not updated his damages calculations since March 31, 2020. (Dkt. No. 82-3 at 5); (Dkt. No. 87-2 at 51).

Mr. Thomas' opinion is that Plaintiffs' total lost investment income is $213,242.90 based on the line-by-line calculations contained in Attachment F. (Dkt. No. 87-1 at 4). Mr. Thomas' report states that the opinions expressed in his expert report are held to a reasonable degree of professional certainty and are based on the information made available to him by Plaintiffs as of the date of his expert report. (Dkt. No. 82-3 at 3).

Defendants argue Schedules C and D are not reliable data upon which Mr. Thomas may base his opinion. (Dkt. No. 82-1 at 4). Defendants argue Mr. Thomas did not independently verify the when the disbursements left the accounts and whether the funds were in fact used for legal fees and litigation expenses. (*Id.* at 7-8). Thus, according to Defendants, Mr. Thomas performed his lost investment income calculation on an assumed figure of $1,163,481.35 that was provided to him by Plaintiffs. (Dkt. No. 82-1 at 9). Defendants also indicate that several line-item disbursements contained in Attachment F are "clearly not related to the [Underlying Lawsuit]." (Dkt. No. 82-1 at 10). Some examples cited by Defendants include: "4/18/16 SC State Income Tax Payment ($9,871.00); 4/18/16 Federal Income Tax Payment ($41,636.00); 9/16/16 Payments to MUSC Hospital ($243.33 and $146.94)." (*Id.*).

Mr. Thomas testified he is not offering an opinion as to whether Plaintiffs' $1,163,481.35 in claimed disbursements/legal fees and litigation expenses is right or wrong. (Dkt. No. 87-2 at 37-38, 41-42). In some cases, Mr. Thomas is asked to review records and determine which items may be considered damages, but he was not asked to do that in this case. (Dkt. No. 82-4 at 6). Mr. Thomas cross-referenced some of the disbursements with legal invoices received from various law firms, but Mr. Thomas did not independently verify that each disbursement was accurate and in fact used for legal fees and litigation expenses in the Underlying Lawsuit. (Dkt. No. 87-2 at 37-38, 41-42).

Plaintiffs' counsel represents it produced to Defendants' counsel 582 pages of documents used by Mr. Thomas to calculate his expert report. (Dkt. No. 87 at 2). The documents consist of "various inventory and appraisements from the [Underlying Lawsuit], emails, portfolio statements from brokerage accounts, invoices for legal services and other services, [along with Attachments C and D] all demonstrating disbursements from brokerage accounts matching invoiced amounts." (*Id.*).

After careful consideration of the parties' arguments, the Court finds Defendants' challenge to the data Mr. Thomas used to calculate Plaintiffs' lost investment income goes to the "weight and credibility of the witness assessment, not its admissibility." *Bresler v. Wilmington Trust Company*, 855 F.2d 178, 195-96 (4th Cir. 2017); *Coleman v. Tyson Farms, Inc.*, No. 2:10-CV-403, 2011 WL 1833301, at *3 (E.D.Va. 2011) (citing *Wilder Enters., Inc. v. Allied Artists Pictures Corp.*, 632 F.2d 1135, 1144 (4th Cir. 1980) ("The asserted fallibility of the expert's assumptions affected the weight of his testimony, not its admissibility.")); *Mcgarity v. FM Carriers, Inc.*, No. CV410-130, 2012 WL 1028593, at *7 (S.D. Ga. Mar. 26, 2012) ("[T]he identification of flawed data or facts relied upon by an expert is precisely the role of cross-examination and does not render expert testimony inadmissible under *Daubert*."). Defendants will have the opportunity to cross-examine Mr. Thomas regarding the data he utilized when forming his opinion. Defendants' motion to exclude the proffered testimony and opinion of Mr. Thomas is denied.

### IV.    Conclusion

For the reasons stated above, Defendants' motion to exclude the testimony and opinions of Plaintiffs' expert is **DENIED**.

**AND IT IS SO ORDERED**.

                                                                s/ Richard M. Gergel
                                                                Richard M. Gergel
                                                                United States District Judge

8

August 9, 2021
Charleston, South Carolina

8